UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC

2006 SEP 15  A 10: 34

| | |
|---|---|
| **Charlie Bells**, # 263336, | ) C/A No. 9:06-2514-RBH-GCK |
| Plaintiff, | |
| vs. | ) **Report and Recommendation** |
| **South Carolina Department of Corrections**; **Kirkland Correctional Institution**; **Lee Correctional Institution**; and **NFN Johnson**, Officer of Lee Correctional Institution, | |
| Defendants. | |

# Background of this Case

The plaintiff is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. The plaintiff has submitted a civil rights complaint on the court-approved Section 1983 form against the South Carolina Department of Corrections, the Kirkland Correctional Institution, the Lee Correctional Institution (which the plaintiff refers to as "Lee Corrections"), and an officer at the Lee Correctional Institution. The above-captioned case

1

is the plaintiff's first case filed in the United States District Court for the District of South Carolina.

The "STATEMENT OF CLAIM" portion of the § 1983 complaint reveals that this civil rights action arises out of an attack on upon the plaintiff on June 23, 2006, by inmate Michael Charles. The plaintiff also alleges that he has not been treated for a kidney problem. The plaintiff's answers on page 2 of the complaint reveal that he filed a grievance on June 23, 2006, but has not received a response on his grievance. In his prayer for relief, the plaintiff writes:

> I would like the Court, to bring this matter befor [sic] a Judge. Let all evidence (medical records) be shown & heard, & all records of the assault be shown & heard & any other evidence we have to be shown. This needs to be done, so the Courts (Judge) can decide on this matter that I have been wronged & many of my civil rights have been viotated [sic] by the staff & SCDC. I use guidelines for S.C. Code of Law 15-3-530 Limitation of Actions.

(Complaint [Entry No. 1], at page 5 [irregular punctuation in original]).

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural

provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review[1] has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 104 L.Ed.2d 338, 109 S.Ct. 1827, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)(recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[2] Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), *cert. denied*, Moffitt v. Loe, 446 U.S. 928 (1980); and Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978). The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *See* Hughes

---

[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[2] Boyce has been held by some authorities to have been abrogated in part, on other grounds, by Neitzke v. Williams, 490 U.S. 319 (1989)(insofar as Neitzke establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

3

v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405 U.S. 319 (1972). See Hughes v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the § 1983 complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

The South Carolina Department of Corrections is immune from suit under the Eleventh Amendment, which divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts, such as a state agency or department. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

4

*See, e.g.,* <u>Federal Maritime Commission v. South Carolina State Ports Authority</u>, 535 U.S. 743, 152 L.Ed.2d 962, 122 S.Ct. 1864, 2002 U.S. LEXIS® 3794 (2002); <u>Board of Trustees of University of Alabama v. Garrett</u>, 531 U.S. 356, 148 L.Ed.2d 866, 121 S.Ct. 955, 2001 U.S. LEXIS® 1700 (2001); <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62, 145 L.Ed.2d 522, 120 S.Ct. 631, 2000 U.S. LEXIS® 498 (2000)(Congress exceeded its authority in making Age Discrimination in Employment Act [ADEA] applicable to States); <u>Alden v. Maine</u>, 527 U.S. 706, 4601, 144 L.Ed.2d 636, 119 S.Ct. 2240, 1999 U.S. LEXIS® 4374 (1999); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984)(although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens); <u>Belcher v. South Carolina Board of Corrections</u>, 460 F. Supp. 805, 808-809 (D.S.C. 1978); and <u>Simmons v. South Carolina State Highway Dept.</u>, 195 F. Supp. 516, 517 (E.D.S.C. 1961). *Cf.* <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765, 146 L.Ed.2d 836, 120 S.Ct. 1858, 2000 U.S. LEXIS® 3428 (2000)(a State is not a person for purposes of *qui tam* liability); and <u>Principality of Monaco v. State of Mississippi</u>, 292 U.S. 313 (1934)(State immune from suit by foreign country), which is cited in <u>Barry v.



5

Fordice, 814 F. Supp. 511, 517, 1992 U.S.Dist. LEXIS® 20893 (S.D.Miss. 1992)("The plaintiffs argue that the defendants' reliance on Monaco is misplaced. Unlike the instant litigation, in Monaco, the plaintiffs in Monaco brought an original action in the United States Supreme Court and named the State of Mississippi as a defendant. This distinction is irrelevant as to the issues before this court. Nothing in the Monaco opinion suggests that a different result would have occurred if the action had been filed originally in a district court rather than the Supreme Court. On the contrary, the Eleventh Amendment principles set forth in Monaco have been expressly relied upon in actions which were originally brought in federal district courts."), *affirmed*, 8 F.3d 1, 1993 U.S.App. LEXIS® 29115 (5th Cir. 1993).

Under Pennhurst State School & Hospital v. Halderman, supra, 465 U.S. at 99 & n. 9, a State must expressly consent to suit in a federal district court. Higgins v. Mississippi, 217 F.3d 951, 2000 U.S.App. LEXIS® 15330 (7th Cir. 2000)("A state may, it is plain, waive its Eleventh Amendment immunity from being sued in federal court either legislatively, . . . or by an explicit waiver in the lawsuit in which it is named as a defendant, . . . provided that the waiver is authorized by state law."), where the Court ruled that a federal court could raise an Eleventh Amendment

6

matter on its own initiative. The State of South Carolina has not consented to suit in a federal court. See a provision in the South Carolina Tort Claims Act, § 15-78-20(e), South Carolina Code of Laws, which expressly states that the State of South Carolina does *not* waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State. *Cf.* Pennhurst State School & Hospital v. Halderman, supra, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

Two defendants in this case — the Kirkland Correctional Institution and the Lee Correctional Institution — are subject to summary dismissal because they are not "person[s]" subject to suit pursuant to 42 U.S.C. § 1983. Inanimate objects – such as buildings, facilities, and grounds – do not act under color of state law. Hence, the Kirkland Correctional and the Lee Correctional Institution are not "person[s]" subject to suit under 42 U.S.C. § 1983. See Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310, 1999 U.S.Dist. LEXIS® 9857 (E.D.Va. 1999)("[T]he Piedmont Regional

7

Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); and Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301, 1989 U.S.Dist. LEXIS® 12440 (E.D.N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Cf. Wright v. El Paso County Jail, 642 F.2d 134, 136 n. 3 (5th Cir. 1981).

Officer Johnson, as an employee of the South Carolina Department of Corrections, is subject to suit under 42 U.S.C. § 1983. See Hafer v. Melo, 502 U.S. 21, 116 L.Ed.2d 301, 112 S.Ct. 358, 1991 U.S. LEXIS® 6502 (1991); and West v. Atkins, 487 U.S. 42, 50, 101 L.Ed.2d 40, 108 S.Ct. 2250, 1988 U.S. LEXIS® 2744 (1988)("Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Also, deliberate indifference to an inmate's safety resulting in an inmate attack is actionable under 42 U.S.C. § 1983. Farmer v. Brennan, 511 U.S. 825, 833 128 L.Ed.2d 811, 114 S. Ct. 1970, 1994 U.S.LEXIS® 4274, 1994 WESTLAW® 237595 (1994)(prison officials have duty to protect prisoners from violence "at the hands of other prisoners"), which was an action brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See also Rhodes v. Chapman, 452 U.S. 337, 347, 69 L.Ed.2d 59, 101 S.Ct. 2392

(1981)(suffering physical assaults in prison is not "part of the penalty that criminal offenders pay for their offenses against society"); Benefield v. McDowall, 241 F.3d 1267, 2001 U.S.App. LEXIS® 3338 (10th Cir. 2001)(inmate does not have to wait until he or she is actually assaulted before obtaining relief), which cites Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973)("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief.");[3] Miltier v. Beorn, 896 F.2d 848, 851-852, 1990 U.S.App. LEXIS® 2375 (4th Cir. 1990)("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's



---

[3]At the time Woodhous was decided, inmate attacks were evaluated under a negligence standard. Although the negligence standard for § 1983 actions was superannuated by later case law, Woodhous is still good law on the issue of inmate attacks. See Gilland v. Owens, 718 F. Supp. 665, 1989 U.S.Dist. LEXIS® 9750 (W.D.Tenn.1989):

> Woodhous applies a negligence standard to the conduct of officials in protecting inmates from assault or the threat of assault. While this aspect of Woodhous no longer correctly represents the law in this circuit, see McGhee v. Foltz, 852 F.2d 876, 881 (6th Cir.1988), its holding that an inmate has a right to be free from constant threat of violence is still an accurate statement of the law.

Gilland v. Owens, supra, 718 F. Supp. at 686 n.13.

9

position."); Weiss v. Cooley, 230 F.3d 1027, 1032, 2000 U.S.App. LEXIS® 23705 (7th Cir. 2000); Williams v. Mueller, 13 F.3d 1214, 1216, 1994 U.S.App. LEXIS® 341 (8th Cir. 1994); and Morales v. New York State Dep't of Corrections, 842 F.2d 27, 30, 1988 U.S.App. LEXIS® 3473 (2nd Cir. 1988).

Even so, the plaintiff's answers on page 2 of the complaint (Entry No. 1) indicate that his grievance filed on June 23, 2006, is still pending. As a result, this case is subject to summary dismissal because the grievance filed on June 26, 2006, is pending. See 42 U.S.C. § 1997e(a), which was enacted as part of the Prison Litigation Reform Act; Porter v. Nussle, 534 U.S. 516, 524, 152 L.E.2d 12, 122 S.Ct. 983, 2002 U.S. LEXIS® 1373 (2002)("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 531 U.S. 956, 149 L.Ed.2d 958, 121 S.Ct. 1819, 2001 U.S. LEXIS® 3982 (2001)(unanimous decision: PLRA requires administrative exhaustion even if grievance procedure does not allow monetary damages and prisoner seeks only monetary damages, so long as grievance tribunal has authority to take some responsive action); and Higginbottom v. Carter, 223 F.3d 1259, 2000 U.S.App. LEXIS® 21087 (11th Cir. 2000).



Although the lack of exhaustion of administrative remedies is, generally, considered an affirmative defense and not a jurisdictional infirmity in the Fourth Judicial Circuit, if the lack of exhaustion is apparent from the face of the prisoner's complaint or from additional facts requested by the court, *sua sponte* dismissal prior to service of the complaint is appropriate. See Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 683, 2005 U.S.App. LEXIS® 8698 (4th Cir. 2005).

In orders filed on May 9, 1996, this court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996).

In order to exhaust the SCDC administrative remedy, an inmate must fill out a Form 10-5 (Step 1 Grievance form) about the matters raised in his grievance and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The grievance coordinator has **five (5)** days from the time the grievance is presented by the inmate to put it into SCDC's automated system. Once the grievance is properly entered into the SCDC automated system, the Warden

should then respond to the Step 1 grievance in writing within **forty (40)** days. If the inmate is not satisfied with the Warden's response, then, within **five (5)** days, he or she must file an appeal of the Step 1 grievance response by filing a Form 10-5a (Step 2 Appeal) to the Responsible Official with the Inmate Grievance Coordinator. A responsible SCDC official will then have **sixty (60)** days to respond to the Step 2 grievance. The decision of the "responsible official" who answers Step 2 is the Department's final response in the matter.

Even if SCDC, ultimately, fails to respond to the plaintiff's Step 1 grievance filed on June 23, 2006, and, as a result, leaves the plaintiff with no decision to appeal to Step 2, the plaintiff must still refrain from filing suit in federal court until all time periods for both steps to be completed have expired. Once the full period for prison responses has run without the issuance of any response, it is generally held that the inmate has substantially complied with the § 1997e exhaustion requirement. *See, e.g.*, Boyd v. Corrections Corp. of America, 380 F.3d 989, 996, 2004 U.S.App. LEXIS® 18903 (6th Cir. 2004)("Following the lead of the . . . other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance), *cert. denied*, 544 U.S. 920, 161 L.Ed.2d 477, 125 S.Ct. 1639,

2005 U.S. LEXIS® 2458 (2005); Jernigan v. Stuchell, 304 F.3d 1030, 1032, 2002 U.S.App. LEXIS® 19144 (10th Cir. 2002)("agree[ing with other circuits] that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable"); Lewis v. Washington, 300 F.3d 829, 833, 2002 U.S.App. LEXIS® 16388 (7th Cir. 2002)(stating that prison's failure timely to respond renders administrative remedies unavailable); Foulk v. Charrier, 262 F.3d 687, 698, 2001 U.S.App. LEXIS® 18707 (8th Cir. 2001)(holding that defendants failed to prove non-exhaustion where they presented no evidence to refute plaintiff's contention that he could not pursue grievance further after warden did not respond to his grievance); and Underwood v. Wilson, 151 F.3d 292, 295, 1998 U.S.App. LEXIS® 18884 (5th Cir. 1998)(holding that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired"), *cert. denied*, 526 U.S. 1133, 143 L.Ed.2d 1012, 119 S.Ct. 1809, 1999 U.S. LEXIS® 3500 (1999).  Under such circumstances, an inmate of the South Carolina Department of Corrections who files a Step 1 grievance but receives no response thereto must wait at least 110 days (approximately four (4) months) from the time he or she files a Step 1 grievance before it may be said that he

13

or she has exhausted "such administrative remedies as are available."[4]  42 U.S.C. § 1997e(a).  See also Woodford v. Ngo, 165 L.Ed.2d 368, 126 S.Ct. 2378, 2006 U.S. LEXIS® 4891 (2006)(PLRA requires "proper exhaustion" of administrative remedies).

# Recommendation

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without issuance and service of process.  See Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. *, 1993 U.S.App. LEXIS® 17715 (4th Cir. 1993), *replacing* unpublished opinion

---

[4]It appears that as long as the inmate waits the full 110 days established for the running of the entire process through Step 2, he or she may then file suit in federal court even though he or she has not formally completed Step 2. This is true because the SCDC policy states, in pertinent part, "[i]f, at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal." Section 14(e) of the SCDC policy. See Boyd; Jernigan; Lewis; Foulk; and Underwood. The 110-day period is determined by giving the maximum amount of time provided in the SCDC policy for each step in the process and assuming that no extensions of time are sought and the SCDC fails to timely respond to the Step 1 grievance within the forty (40) days allowed or fails to request a specific continuance of the established time to respond by SCDC officials at any point during the process. See Section 16 of the SCDC Policy, which provides that all grievances are to be disposed of within 105 days from the entry of the Step 1 grievance. Since the institutional grievance coordinator has five (5) days to enter the Step 1 grievance, the sum of the five-day entry period and the 105-day period set forth in Section 16 is 110 days. The plaintiff's 110-day period will expire on October 11, 2006.

14

originally tabled at 993 F.2d 1535 (4th Cir. 1993); <u>Boyce v. Alizaduh</u>, <u>supra</u>; <u>Todd v. Baskerville</u>, <u>supra</u>, 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B)[essentially a redesignation of "old" 1915(d)]; and 28 U.S.C. § 1915A[as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal].[5] The plaintiff's attention is directed to the Notice on the next page.

                                              Respectfully submitted,

September 15, 2006  
Charleston, South Carolina

                                              George C. Kosko  
                                              United States Magistrate Judge

---

[5] In light of the recent decision of the United States Court of Appeals for the Fourth Circuit in <u>Green v. Young</u>, 454 F.3d 405, 2006 U.S. App. LEXIS® 18685 (4th Cir. 2006)(dismissal under PLRA for failure to exhaust administrative remedies does not count as a "strike" for purposes of the "three strikes" rule), imposition is a "strike" is not appropriate in the above-captioned case.

15

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only "I object" preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 6 n. 1 (3rd Cir. 1984)(*per curiam*)("plaintiff's objections lacked the specificity necessary to trigger *de novo* review"). **This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835,**
**Charleston, South Carolina 29402**
